**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| PATRICIA LAFLEUR and MICHAEL GROSE SR., Ohio residents, individually and as the representatives of a class of similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> YARDI SYSTEMS Inc., a California corporation, <br><br> Defendant. | Case No.: <br><br> Class Action |

**CLASS ACTION COMPLAINT**

Plaintiffs, Patricia LaFleur and Michael Grose Sr. bring this action on behalf of themselves, and all other persons similarly situated, and allege the following against Defendant Yardi Systems, Inc. ("Yardi" or "Defendant"):

**NATURE OF ACTION**

1. Plaintiffs and members of the proposed class (the "Class" or "Class Members") seek statutory damages, an injunction, and other relief from Yardi for violations of the Ohio Right of Publicity Statute ("ORPS"), Ohio Revised Code § 2741.01, *et seq.*, and Ohio common law.

2. ORPS prohibits using an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance for commercial purposes without prior written consent. OH ST § 2741.02. Ohio common law also precludes the commercialization of an individual's name or likeness through the tort of misappropriation. *See James v. Bob Ross Buick, Inc.*, 167 Ohio App. 3d 338, 342 (2006) (citing *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224, 229-30 (1976) (adopting definition of the tort of misappropriation as set forth in the Restatement of Torts 2d, Section 652C)).

3. Yardi provides property management software and investment management solutions for various real estate professionals such as landlords, investors and leasing agents. One of Yardi's products is PropertyShark, a property-research website offering reports for commercial and residential properties, including aggregated real-estate data from numerous sources.

4. Visitors to the PropertyShark website are able to view detailed property reports, which include personal identifying information corresponding to the property, such as the property owner's full name, the owner's address, the property's purchase date and price, and its property tax information. This information enables users to accurately identify an individual.

5. PropertyShark users can access these property reports by utilizing the "Properties" search function to search by address, neighborhood, city, and/or zip code. Users can also access these reports through utilizing the "Property Lists" tab. To access the search results and see ownership information, the user must create a PropertyShark account.

6. PropertyShark also offers an "owner search" feature, allowing users to enter a person's name along with their "City/County, State, Zip or Borough" to view that person's portfolio of current and previously owned properties. To access the search results, a user must create a PropertyShark account. From the search results, the user is able to view the same property reports previously described in relation to the searched person.

7. To view these property reports, a user must sign up for a free PropertyShark account, which allows the user to access one free report in order to acquaint prospective customers with the product. Once the free report is accessed, data on additional properties cannot be seen, with users receiving a message stating they have exceeded their quota of reports. These limitations are intended to encourage visitors to purchase a premium subscription to PropertyShark, which offers significantly discounted access to reports.

8. Plaintiffs and the Class have no relationship with Yardi or PropertyShark. They do not and have not subscribed to or used the PropertyShark platform. More importantly, Plaintiffs and the Class never provided Yardi or PropertyShark with written consent to use their identity to advertise premium subscriptions to the PropertyShark platform.

9. Despite failing to obtain written consent from Plaintiffs and the Class, Yardi nevertheless utilized their personal identifying information for the purpose of enticing users of PropertyShark to enter into paid premium subscriptions for additional access to reports contained in the platform. In other words, Yardi used Plaintiffs' and other Class Members' identities for commercial purposes without their written permission in violation of ORPS and Ohio common law.

10. Plaintiffs bring this Complaint seeking an order (i) declaring that Yardi's conduct violates ORPS and common law, (ii) requiring that Yardi cease the unlawful activities described herein, (iii) awarding Plaintiffs and the Class actual damages, including any profits derived from and attributable to the unauthorized use of their names or likenesses, or statutory damages between $2,500 and $10,000 as provided at OH ST § 2741.07(b), and (iv) an award for punitive damages, if warranted, and reasonable attorneys' fees, court costs, and other expenses associated with this action.

## PARTIES

11. Plaintiff Patricia LaFleur is a citizen of the State of Ohio residing in Avon Lake.

12. Plaintiff Michael Grose Sr. is a citizen of the State of Ohio residing in Canton.

13. Defendant Yardi is a California corporation with its principal place of business located in Goleta, California. For its product PropertyShark, Yardi seeks out and compiles identifying information of Ohio citizens and uses that information to market monthly or yearly subscriptions for PropertyShark to Ohio citizens and others without written consent.

## JURISDICTION AND VENUE

14. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because sufficient diversity of citizenship exists between the parties – Plaintiffs are citizens of Ohio and Yardi is a California corporation with its principal place of business in California. Further, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, with at least 100 or more potential class members based on the number of property owners whose information is contained in PropertyShark's platform and the damages available through ORPS. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15. The Court has personal jurisdiction over Yardi because it sought out and compiled the names and other identifying information of Plaintiffs and other Ohio citizens and used that information for marketing to Ohio citizens and others without their written consent. In so doing, Yardi committed the statutory violations and common law torts related to the matters complained of herein in this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Yardi, through its PropertyShark platform, collected and used the personal information of Ohio residents, including those residing in this District, for commercial purposes without their consent.

## OHIO RIGHT OF PUBLICITY STATUTE

17. ORPS prohibits the use of "any aspect of an individual's persona for a commercial purpose ... [without] written consent." OH ST § 2741.02.

18. ORPS defines "persona" as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." OH ST § 2741.01(A).

19. "Commercial purpose" is defined in pertinent part as "the use of or reference to an aspect of an individual's persona .... (2) For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter." OH ST § 2741.01(B).

20. A person who violates ORPS is liable in a civil action for actual damages, including any profits derived from and attributable to the unauthorized use of an individual's persona or, at the election of the plaintiff and in lieu of actual damages, statutory damages in the amount of at least $2,500 and not more than $10,000, as determined in the discretion of the trier of fact. OH ST § 2741.07(A)(1)(a) and (b).

21. ORPS further provides that punitive or exemplary damages may be awarded and authorizes the issuance of injunctive relief where appropriate. OH ST § 2741.07(A)(1)(c) and (D)(3).

22. The remedies provided for in ORPS are not exclusive; rather, they are in addition to any other remedies provided for by state or federal statute or common law. OH ST § 2741.08.

23. Ohio common law also recognizes the tort of appropriation of name or likeness. This tort creates a cause of action for the appropriation of a name or likeness by a defendant for the defendant's own use or benefit.

**FACTUAL ALLEGATIONS**

24. Yardi is a real estate software company that offers solutions for property management and investment management. In 2010, Yardi acquired PropertyShark, a property research website that offers reports for commercial and residential properties, including ownership details, property values, and sales history.

25. PropertyShark's database of personal information stores data that "is aggregated

5

from over 400 different sources."[1] These sources are both "public and proprietary."[2]

26. According to PropertyShark, their data is collected "both manually and automatically," including by its "dedicated data research team [that] makes sure the information [it] gather[s] is as accurate as it can be."[3]

27. PropertyShark's platform allows users to search for properties in a specific city and view detailed reports on each property. When a user clicks on the "See Ownership" link for a property, they are shown a blurred report with a message indicating that the information is only accessible to subscribing users. The message at the top of the page states that a subscription is needed to access the available data.

28. The PropertyShark platform also allows users to search for specific addresses, which brings the user directly to that property's report. The message at the top of the page states that the property report may be unlocked by signing up for a free account.

29. In addition to property searches, PropertyShark offers an "owner search" feature, which enables users to input an owner's name along with their "City/County, State, Zip or Borough" to find an owner's portfolio of current and previously owned properties. To view the owner search results, a user must create a PropertyShark account.

30. On the owner search results page, free account users are shown only the top three property results corresponding to the name entered, labeled by address. A message on the page states, "Your account gives you access to the first 3 results. Upgrade to any subscription to view

---

[1] *See* https://www.propertyshark.com/mason/text/services.html (last visited July 13, 2024).

[2] *See* https://support.propertyshark.com/hc/en-us/articles/360022415412-What-data-can-I-find-in-Property-Reports (last visited July 13, 2024).

[3] *See* https://www.propertyshark.com/mason/text/services.html (last visited July 13, 2024).

all results or choose our Platinum package to also unlock Real Owners behind LLCs and their verified phone numbers." Clicking on any of the top three results leads to a property report page.

31. In order to view a property report—whether accessed through the property search or owner search features—a user must sign up for a free PropertyShark account. Upon completing the sign-up form, the user can view one free report. This single free report applies to both property and owner search features and is not separate for each.

32. Whether accessed through a search for properties, or the owner search function, the free property report contains the same information corresponding to the address, including the owner's full name, the owner's address, and the purchase date, price, and property tax details for the property, which collectively identify the property owner.

33. At the top of the free report, a message states "With a free account, users receive full and permanent access to **1 property** report. If you need more reports, you can either upgrade to a premium account or purchase individual reports. Please view your report below" (emphasis in original).

34. After the user generates their free report, reports on additional properties cannot be viewed. When a property is clicked from the search results, a page which is identical or similar to that shown below is displayed showing a message that the user has used their monthly quota of reports on a free account, and that to continue accessing property reports, the user must purchase an individual report or, as more prominently advertised, purchase a subscription to PropertyShark, which offers a significantly reduced per-report rate.



35. Users wishing to access the site with a focus on Ohio can subscribe to a "Pro" plan for $49.95 per month or $499.95 per year.

36. The purpose behind Yardi providing users with a free PropertyShark account and one free report is to advertise and convince prospective customers to purchase subscriptions to PropertyShark, which offer significantly discounted access to reports compared to individual purchases. The monthly subscription under the "Pro" plan, starting at $49.95, includes 175 reports at the much lower rate of $0.29 per report and is prominently highlighted as the "best deal!" in comparison to purchasing individual reports. The free account and report serve as a preview of the platform's features and the type of information available, forming part of a commercial strategy mainly aimed at enticing users to commit to a monthly or yearly subscription. Users also have the option to purchase individual reports at $4.95 each, and this is a secondary commercial objective that is also promoted by the provision of one free report.

37. The purpose of the free trial, along with access to Plaintiffs' and the Class Members' personas, is to advertise and entice prospective customers to purchase either individual reports, or monthly or yearly subscriptions to PropertyShark. The free trial, together with access to Plaintiffs' and the Class Members' personas, is central to Yardi's advertising scheme and is part of Yardi's effort to sell PropertyShark subscriptions.

38. Plaintiffs' and the Class Members' personas have intrinsic commercial value for the simple reason that they are used for advertising purposes and are a significant asset to the appeal of Yardi's PropertyShark platform. Yardi would not have misappropriated them for advertising purposes if they did not have intrinsic commercial value.

39. On information and belief, PropertyShark searches for and compiles personal information of individuals, including Class Members, from online sources and public records without their knowledge or consent. Yardi does not obtain written consent from these individuals before using their identities to market its subscription services.

### **Facts relating to Patricia Lafleur**

40. In May 2024, Patricia LaFleur discovered that her persona was accessible through PropertyShark. Patricia LaFleur can confirm that a report for her property is contained in the PropertyShark database which includes her name as the property owner, the property address (which is her home), purchase date of the property, purchase price of the property, property tax details, and other information about the property she owns in Ohio. The report is accessible through both the property search and owner search functions.

41. Potential customers availing themselves of Yardi's PropertyShark platform are able to view and, on information and belief, have viewed information on LaFleur using their free account.

42. Yardi allows access to the report of LaFleur contained on its PropertyShark

9

platform to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into paid subscriptions for continued access to the platform. Thus, LaFleur's identity has been used by Yardi to market paid subscriptions to PropertyShark.

43. LaFleur has no relationship with Yardi and does not utilize or subscribe to its PropertyShark platform.

44. LaFleur did not give consent, written or otherwise, to Yardi to use her persona for its PropertyShark platform, or for any other reason. Nor did LaFleur provide Yardi with written consent to use her identity for commercial purposes. Had Yardi requested her consent, LaFleur would not have provided it.

45. LaFleur does not know how Yardi obtained her name and identifying information for its PropertyShark platform. On information and belief, PropertyShark compiled her information from various sources of information, including public records.

46. Yardi did not obtain written consent from LaFleur prior to compiling her personal information to create a report on her for PropertyShark. Yardi also did not obtain prior written permission to use her name and other identifying information to advertise paid subscriptions for PropertyShark or the purchase of other individual property reports on the platform. On information and belief, Yardi did not obtain written permission from any sources from which it compiled LaFleur's personal identifying information for its PropertyShark platform.

47. LaFleur has intellectual property and privacy interests in her name, likeness, and identity as recognized by Ohio statutory and common law. LaFleur has the right to exclude anyone from using her identity for commercial purposes without her written permission.

48. The use of LaFleur's identity to advertise subscriptions to PropertyShark and the purchase of other individual reports demonstrates that her identity has intrinsic commercial

value. The intrinsic commercial value of LaFleur's identity is demonstrated by its inclusion in the platform. Yardi's business model is dependent on LaFleur's identity, and others like it. Yardi derives its value through the accumulation of individual identities, which subscribers can access by either paying for on a monthly or yearly basis, or purchasing individual reports.

49. Yardi's use of LaFleur's identity to advertise subscriptions to PropertyShark or the purchase of separate, individual reports is misleading in that it gives the false impression that Shephard is a willing participant in the platform, which she is not, and that she wants to receive unsolicited communications from parties such as real estate agents, property developers, and interested homebuyers, which she does not.

50. Yardi has injured LaFleur by using her name and likeness for its own commercial purposes without compensation or permission and has potentially subjected her to harassing and uninvited communications.

### Facts relating to Michael Grose Sr.

51. In May 2024, Michael Grose Sr. discovered that his persona was accessible through PropertyShark. Michael Grose Sr. can confirm that a report for his property is contained in the PropertyShark database which includes his name as the property owner, the property address (which is his home), purchase date of the property, purchase price of the property, property tax details, and other information about the property he owns in Ohio. The report is accessible through both the property search and owner search functions.

52. Potential customers availing themselves of Yardi's PropertyShark platform are able to view and, on information and belief, have viewed information on Grose using their free account.

53. Yardi allows access to the report of Grose contained on its PropertyShark platform to have potential customers familiarize themselves with the platform in the hope that those

11

customers are incentivized to enter into paid subscriptions for continued access to the platform. Thus, Grose's identity has been used by Yardi to market paid subscriptions to PropertyShark.

54. Grose has no relationship with Yardi and does not utilize or subscribe to its PropertyShark platform.

55. Grose did not give consent, written or otherwise, to Yardi to use his persona for its PropertyShark platform, or for any other reason. Nor did Grose provide Yardi with written consent to use his identity for commercial purposes. Had Grose requested his consent, he would not have provided it.

56. Grose does not know how Yardi obtained his name and identifying information for its PropertyShark platform. On information and belief, PropertyShark compiled his information from various sources of information, including public records.

57. Yardi did not obtain written consent from Grose prior to compiling his personal information to create a report on him for PropertyShark. Yardi also did not obtain prior written permission to use his name and other identifying information to advertise paid subscriptions for PropertyShark or the purchase of other individual property reports on the platform. On information and belief, Yardi did not obtain written permission from any sources from which it compiled Grose's personal identifying information for its PropertyShark platform.

58. Grose has intellectual property and privacy interests in his name, likeness, and identity recognized by Ohio statutory and common law. Grose has the right to exclude anyone from using his identity for commercial purposes without his written permission.

59. The use of Grose's identity to advertise subscriptions to PropertyShark and the purchase of other individual reports demonstrates that his identity has intrinsic commercial value. The intrinsic commercial value of Grose's identity is demonstrated by its inclusion in

the platform. Yardi's business model is dependent on Grose's identity, and others like it. Yardi derives its value through the accumulation of individual identities, which subscribers can access by either paying on a monthly or yearly basis, or purchasing individual reports.

60. Yardi's use of Grose's identity to advertise subscriptions to PropertyShark is misleading in that it gives the false impression that Grose is a willing participant in the platform, which he is not, and that he wants to receive unsolicited communications from parties such as real estate agents, property developers and interested homebuyers, which he does not.

61. Yardi has injured Grose by using his name and likeness for its own commercial purposes without compensation or permission, and has potentially subjected him to harassing and uninvited communications.

## CLASS ALLEGATIONS

62. Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiffs bring this class action on behalf of themselves and the following class:

> All current and former Ohio residents who are not subscribers to Yardi's PropertyShark platform and whose name, voice, signature, photograph, image, likeness, distinctive appearance, and/or identity is incorporated in property reports or owner search results used to market individual reports or paid subscriptions for the platform.

63. Excluded from the Class are Yardi, its officers, directors, shareholders, employees, attorneys (and attorney family members), and members of the Ohio judiciary. Plaintiffs reserve the right to amend the Class definition upon completion of class discovery when the contours and the parameters of the Class become more apparent.

64. **Numerosity (Fed. R. Civ. P 23(a)(1))**. On information and belief, the members of the class are so numerous that joinder of all members is impractical. Based on the investigation by their counsel and representations made by Yardi on the PropertyShark website, Plaintiffs

13

reasonably believe that the class comprises thousands of current and former Ohio citizens whose information is compiled and maintained in PropertyShark's database and searchable on its platform. The exact number of persons in the class can be determined from records maintained by Yardi, but certainly exceeds 40, and is estimated to be in the thousands.

65. **Commonality (Fed. R. Civ. P. 23(a)(2))**. There are many common questions of law and fact that exist as to Plaintiffs and members of the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to:

(a) whether Yardi uses Plaintiffs' and Class Members' identities in property search reports and owner search results for its own commercial benefit;

(b) whether Yardi obtained written consent from Plaintiffs and the Class prior to using their identities in property search reports and owner search results promoting its platform as required by 765 ILCS § 1075/30;

(c) whether the conduct described herein constitutes a violation of ORPS and Ohio common law;

(d) whether Yardi's commercial use of the identities of Plaintiffs and the Class was willful such that Plaintiffs and the Class are entitled to punitive damages; and

(e) whether Plaintiffs and Class Members are entitled to declaratory, injunctive, and monetary relief as requested.

66. Plaintiffs and the members of the Class have a commonality of interest in the subject matter of the lawsuit and remedies sought.

67. **Typicality (Fed. R. Civ. P. 23(a)(3)).** Plaintiffs' claims are typical of the claims

of the members of the Class. Yardi's misuse of Plaintiffs' and Class Members' identities, personal information, and other identifying information was the same for each.

68. **Injunctive and/or Declaratory Relief (Fed. R. Civ. P. 23(b)(2)).** As demonstrated above, Yardi has acted on grounds generally applicable to the proposed class such that final injunctive relief, as contemplated by OH ST § 2741.07(D)(3), is appropriate with respect to the Class as a whole.

69. **Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained competent counsel experienced in class action litigation in state and federal courts nationwide, and Plaintiffs have no interest adverse to any member of the Class. Plaintiffs intend to prosecute this case vigorously on behalf of themselves and the Class.

70. **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)).** Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a) Proof of Yardi's liability on Plaintiffs' claims will also prove liability for the claims of the Class without the need for separate or individualized proceedings;

(b) Evidence regarding defenses or any exceptions to liability that Yardi may assert and attempt to prove will come from Yardi's records and will not require individualized or separate inquiries or proceedings;

(c) Yardi has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class Members;

(d)     The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Yardi economically feasible. Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system. A class action, on the other hand, will permit a large number of claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs, without the risk of inconsistent judgments; and

(e)     This case is inherently manageable as a class action in that:

    (i)     Yardi's records will enable Plaintiffs to readily identify class members and establish liability and damages;

    (ii)     Liability and damages can be established for Plaintiffs and the Class with the same common proofs;

    (iii)     A class action will result in an orderly and expeditious administration of claims, and it will foster economics of time, effort, and expense;

    (iv)     A class action will contribute to uniformity of decisions concerning Yardi's practices; and

    (v)     As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

## **COUNT I**

### **Violation of ORPS, Ohio Revised Code § 2741.01, et seq.**

71.     Plaintiffs incorporate by reference the allegations contained in all preceding

paragraphs of this Complaint.

72. As stated, ORPS prohibits the use of an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance for commercial purposes without prior written consent. OH ST § 2741.02.

73. By engaging in the foregoing acts and omissions, Yardi used Plaintiffs' and Class Members' names, voices, signatures, photographs, images, likenesses, and/or distinctive appearances for commercial purposes without first obtaining written consent.

74. Specifically, Yardi, through its PropertyShark platform, has used Plaintiffs' and Class Members' personas in property reports and owner search results to market and sell individual reports and subscriptions to its platform.

75. Yardi's use of Plaintiffs' and Class Members' personas to advertise subscriptions to PropertyShark and the purchase of individual reports demonstrates that said personas have intrinsic commercial value, which is demonstrated by their inclusion in the platform. Yardi's business model is dependent on Plaintiffs' and Class Members' personas. Yardi derives its value through the accumulation of individual identities, which subscribers can access by either paying on a monthly or yearly basis, or purchasing individual reports, which inures to Yardi's commercial benefit, namely, to generate revenue through the sale of individual reports and subscriptions to PropertyShark.

76. Yardi did not obtain written consent from Plaintiffs or Class Members before using their personas for these commercial purposes.

77. Under ORPS, Yardi is liable for either actual damages, including any profits derived from and attributable to the unauthorized use of an individual's persona, or statutory damages in the amount of at least $2,500 and not more than $10,000, as determined in the

discretion of the trier of fact. OH ST § 2741.07(A)(1)(a) and (b).

78. Plaintiffs may also be entitled to punitive or exemplary damages and injunctive relief. OH ST § 2741.07(A)(1)(c) and (D)(3).

79. As a result of Yardi's violations of ORPS, Plaintiffs and the Class have suffered injury to their privacy rights and economic damages. Plaintiffs and Class Members have been denied the commercial value of their personas, which Yardi used without permission from or compensation to Plaintiffs and the Class.

80. Plaintiffs and Class Members were denied their statutorily protected right to control how their personas are used and suffered economic damages based on that misuse.

81. Plaintiffs, on behalf of the Class, seek statutory damages for Yardi's violations of ORPS, or alternatively, actual damages and profits derived from the unauthorized use of Plaintiffs' and Class Members' personas; punitive or exemplary damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of reasonable attorneys' fees, court costs, and other expenses associated with this action.

## COUNT II

### Ohio Common Law Tort of Appropriation of Name or Likeness

82. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

83. Ohio common law recognizes the tort of appropriation of name or likeness. The tort creates a cause of action for the appropriation of a name or likeness by a defendant for the defendant's own use or benefit. *James v. Bob Ross Buick, Inc.,* 167 Ohio App. 3d 338, 342 (2006) (citing *Zacchini v. Scripps-Howard Broadcasting Co.,* 47 Ohio St. 2d 224, 229-30 (1976)).

84. By engaging in the foregoing acts and omissions, Yardi appropriated the names and likenesses of Plaintiffs and Class Members for its own commercial benefit.

85. Specifically, Yardi, through its PropertyShark platform, has used Plaintiffs' and Class Members' names and likenesses in property reports and owner search results to market and sell individual reports and subscriptions to its platform.

86. Yardi's use of Plaintiffs' and Class Members' names and likenesses has commercial value and was done for Yardi's own benefit, namely, to generate revenue through the sale of individual reports and subscriptions to PropertyShark.

87. Yardi did not obtain consent from Plaintiffs or Class Members before using their names and likenesses for these commercial purposes.

88. As a result of Yardi's misappropriation of their names and likenesses, Plaintiffs and the Class have suffered injury to their privacy rights and economic damages. Plaintiffs and Class Members have been denied the commercial value of their names and likenesses, which Yardi used without permission from, or providing compensation to, Plaintiffs and the Class.

89. Plaintiffs and Class Members were denied their common law right to control how their names and likenesses are used and suffered economic damages based on that misuse.

90. Pursuant to Ohio common law, Plaintiffs, on behalf of themselves and the Class, seek monetary recovery in the amount of the commercial benefit Yardi derived from its misuses of their names and likenesses, as well as the entry of an injunction prohibiting further misuse.

91. Plaintiffs also seek punitive damages, as Yardi's conduct in misappropriating Plaintiffs' and Class Members' names and likenesses was willful, wanton, and in reckless disregard of their rights.

92. Additionally, Plaintiffs seek an award of reasonable attorneys' fees, court costs, and other expenses associated with this action, as may be allowable under Ohio common law for this tort.

**WHEREFORE**, Plaintiffs, PATRICIA LAFLEUR and MICHAEL GROSE SR., individually and on behalf of all other similarly situated persons, demand judgment in their favor and against Defendant Yardi Systems, Inc. as follows:

A. Certifying this case as a Class Action and appointing Plaintiffs and their attorneys as class representatives and class counsel, respectively;

B. Declaring that Yardi's actions, as described herein, violate ORPS and Ohio common law;

C. Awarding statutory damages to Plaintiffs and the Class for each violation of ORPS and/or actual damages and profits derived from the unauthorized use of Plaintiffs' and Class Members' names, likenesses and personas, plus prejudgment interest;

D. Enjoining Yardi from committing further misuse of Plaintiffs' personas and name and likeness for commercial gain;

E. Awarding Plaintiffs reasonable attorneys' fees and costs incurred in filing and prosecuting this action as provide by ORPS; and

F. Awarding such other and further relief as this Court deems appropriate and just.

Patricia LaFleur and Michael Grose, Sr., individually and as representatives of a class of similarly-situated persons

By: s/ Wallace C. Solberg
Wallace C. Solberg
Brian J. Wanca
ANDERSON + WANCA
3701 W. Algonquin Rd. Ste 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
wsolberg@andersonwanca.com
bwanca@andersonwanca.com